UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

FILED BY _____ D.C

00 JAN 28 PM 3:57

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.-FTL

UNITED STATES OF AMERICA, )
       Plaintiff, )
v. )
FLORIDA HEALTH INSTITUTE, INC., )
SAMPLE ROAD REHABILITATION )
CENTER, INC., PENNACLE REHAB )
SERVICES OF FLORIDA, INC., )
NATIONAL MEDICAL SYSTEMS and )
SUPPLIES, INC., GATEWAY TO )
HEALTH REHABILITATION, INC., )
WEMAC, INC., and ELLIOT HOUSLEY, )
RICARDO CHOI, and ANTHONY )
MIGNOTT a/k/a MARK A. MIGNOTT, )
individually, )
       Defendants. )

**00-6143**

**CIV-FERGUSON**

**MAGISTRATE JUDGE SNOW**

COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
INJUNCTION, OTHER EQUITABLE RELIEF, DAMAGES,
PENALTIES AND PRE/POST JUDGMENT REMEDIES

    The United States of America, by and through the undersigned United States Attorney, respectfully alleges as follows:

JURISDICTION AND VENUE

    1. This complaint is brought by the United States for a temporary restraining order, preliminary and permanent injunction and other equitable relief pursuant to 18 U.S.C. § 1345; for treble damages and civil penalties under the False Claims Act, as amended, 31 U.S.C. §§ 3729-3733; and for pre and post judgment remedies and other relief pursuant to the False Claims Act, as amended, 31 U.S.C. §§ 3729-3733; and for pre and post judgment remedies and other relief pursuant to the Federal Debt Collection Procedures



Act, 28 U.S.C. §§ 3001-3308. This court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1345, 31 U.S.C. § 3730 and § 1332(b), and pursuant to 28 U.S.C. § 1345.

2.  This court has personal jurisdiction over the defendants as they prepared and submitted false Medicare claims in and from this district; the principal place of business of the corporate defendants, as represented by the defendants to the plaintiff, is located within the jurisdiction of this court; and it is believed that the individual defendants reside within the jurisdiction.

3.  Venue is proper in this district under 28 U.S.C. §§1391(b) and 1391(c) and under 31 U.S.C. §3732(a).

PARTIES

4.  Plaintiff is the United States of America (hereinafter referred to as "United States"). At all times material to this civil action, the Department of Health and Human Services (hereinafter referred to as "DHHS") was an agency and instrumentality of the plaintiff United States, and the Health Care Financing Administration (hereinafter referred to as "HCFA") was the component agency of DHHS which administers and supervises the Medicare program. HCFA contracted with First Coast Service Options, Inc. (hereinafter referred to as "First Coast") to receive, adjudicate, process and pay certain Medicare claims submitted to it by Medicare beneficiaries or providers.

5.  Defendant Florida Health Institute, Inc. ("FHI"), is a corporation organized and existing under the laws of Florida

since June 26, 1997, which lists as its business address 9370 Sunset Drive, Suite 103 & 104, Miami, Florida 33173. The corporate documents list Jose Pujols, Esquire as the registered agent. Michael Scully is listed as president and director.

6. Defendant Sample Road Rehabilitation Center, Inc. ("Sample"), is a corporation organized and existing under the laws of Florida since May 6, 1997, which lists as its business address 440 East Sample Road, Suite 103, Pompano Beach, Florida 33064. The corporate documents list John E. Bodden, M.D., as the registered agent and director.

7. Defendant Pennacle Rehab Services of Florida, Inc. ("Pennacle"), is a corporation organized and existing under the laws of Florida since October 29, 1998, which lists as its business address 4200 N.W. 16th Street, Suite 310, Ft. Lauderdale, Florida 33313. The corporate documents list Elliot J. Housley as the registered agent and director.

8. Defendant National Medical Systems and Supplies, Inc. ("National Medical"), is a corporation organized and existing under the laws of Florida since September 9, 1999, which lists as its business address 7501 W. Oakland Park Blvd., Suite 101, Ft. Lauderdale, Florida 33319. The corporate documents list Service Company, 1201 Hays Street, Tallahassee, Florida 32301 as the registered agent. Elliot J. Housley is listed as the director.

9. Defendant Gateway to Health Rehabilitation, Inc. ("Gateway"), is a corporation organized and existing under the laws of Florida since June 2, 1997, which lists as its business address

510 N.W. 207th Avenue, Pembroke Pines, Florida 33029. The corporate documents list Ricardo Choi as the registered agent and director.

10. Defendant Wemac, Inc., ("Wemac"), is a corporation organized and existing under the laws of Florida since September 21, 1999, which lists as its business address 8366 N.W. 43rd Street, Coal Springs, Florida 33065-1304. The corporate documents list Corporate Service Company, 1201 Hays Street, Tallahassee, Florida 32301 as the registered agent. Anthony Mignott and Tony Saron are listed as directors.

11. Anthony Mignott ("Mignott") is director of Wemac according to Florida Secretary of State Records. Mignott has signature authority for the bank accounts of Wemac, Pennacle, Sample, and FHI.

12. Ricardo Choi ("Choi") is director of Gateway to Health Rehabilitation, Inc. Choi has signature authority for the bank accounts of Gateway, Sample and FHI.

13. Elliott J. Housley ("Housley") is director of National Medical and Pennacle. Housley is the Registered Agent of Pennacle according to Florida Secretary of State Records. He has signature authority for The bank accounts of Pennacle, National Medical, Sample and FHI.

14. FHI became a Medicare provider as a Comprehensive Outpatient Rehabilitation Facility ("CORF") on 1/7/98. Sample became a Medicare provider as a Comprehensive Outpatient Rehabilitation Facility ("CORF") on 11/03/97.

4

**THE MEDICARE PROGRAM**

15. At all times relevant to this complaint, defendants FHI and Sample were represented to First Coast as providers of outpatient rehabilitation therapy services pursuant to the Medicare - Part A program (hereinafter referred to as "Part A Program"), which was established under subchapter XVIII of Chapter 7 of the Social Security Act, 42 U.S.C. § 301 et seq. and the Medicare Part B Program (hereinafter referred to as "Part B Program"), which was established under subchapter XVIII of Chapter 7 of the Social Security Act, 42 U.S.C. § 301 et seq.

16. The Part A Program provides for benefits to participating hospitals, skilled nursing facilities, home health agencies, hospices, and other health care facilities or agencies to cover the reasonable cost of medically necessary services furnished to individuals entitled under this program. The Part B Program provides for supplementary medical insurance benefits to individuals entitle under this program. The individuals entitled under are generally those individuals aged 65 years and older who are entitled to Social Security benefits (hereinafter referred to as "Medicare beneficiaries").

17. The Part A Program is funded by the federal government through the use of federal funds and employee contributions. The Part B Program is funded in part by premiums paid by Medicare beneficiaries enrolled in the program and is supplemented by contributions from funds provided and paid by the federal government.

18. The DHHS, through HCFA, administers and supervises the Part B Program in Florida. HFCA contracted with First Coast to receive, adjudicate, process and pay any Part B Program claims submitted to it by Medicare beneficiaries or providers. HCFA supplies numbers to health care providers under the Part A Program based on a provider application submitted by the provider to HCFA. The use of these provider numbers allows the health care providers to bill First Coast (the fiscal intermediary) directly for services rendered to patients who are eligible to receive medical services under the programs.

19. CORFs are reimbursed by the Fiscal Intermediary for physician administrative services. Physician direct patient care and other professional services are billed to the Carrier. Through December 1997, Medicare provider reimbursement was based on the provider's cost of providing these services. These reimbursable costs must be reasonable, necessary and proper, as well as related to patient care. On January 1, 1998, the provider Medicare reimbursement was changed to an Adjusted Reimbursable Cost (90% of reimbursable cost). As of January 1, 1999, the provider's Medicare reimbursement changed to a Prospective Payment Service Fee-For-Service with capitation limits on the therapy services provided, such as physical therapy, speech therapy and occupational therapy. There is, however, no capitation limit on respiratory therapy services.

20. Claims are submitted by the CORFs for each Medicare beneficiary and are reimbursed, on an interim basis. Claims under

Part A are paid on an interim basis based on the estimated costs of serving Medicare beneficiaries. For these providers, these interim payments are based on the number of covered visits to Medicare beneficiaries by the provider and the individual provider's rate per visit, which is determined by the provider's previous cost experience.

21. After the end of its fiscal year, each provider submits a cost report to its fiscal intermediary. Based on this cost report, and any adjustments thereto required by the fiscal intermediary, the correct reimbursement for the year is determined. The fiscal intermediary then either pays the provider any additional amounts due or requires the provider to reimburse the Medicare program for excess interim payments.

22. The costs contained in the cost reports are required to be reasonable, necessary for the maintenance of the entity, and related to patient care. Outpatient rehabilitation therapy facilities must disclose the identity of related parties with whom they conduct business in order to allow the fiscal intermediary to adjust costs that are likely to be inflated by health care providers who are self-dealing.

23. Claims under Part A by outpatient rehabilitation therapy providers are submitted to the fiscal intermediary by using UB-92 forms or by transmitting electronically the same information as is required on a UB-92. The UB-92 form includes information on the beneficiary's name and HIC number, the period covered, the number of skilled nursing visits, physical therapy visits, social

worker visits, aide visits, a description of any medical supplies provided, the principal diagnosis requiring home health services, and the referring physician.

24. For each Medicare beneficiary who receives CORF services, the Medicare beneficiary must be under the care of a physician who certifies that the beneficiary needs skilled rehabilitation services. The referring physician must advise the CORF of the beneficiary's medical history, current diagnosis and medical findings, desired rehabilitation goals; and any contraindications to specific activity or intensity of rehabilitation services.

25. For each Medicare beneficiary, the CORF services must be furnished under a written plan of treatment established by ta physician. The provider is required to have a Plan of Treatment which includes the principal diagnosis, types and amounts of services; frequency and duration of services required, and the anticipated rehabilitation goals. The Plan of Treatment must be reviewed by the CORF physician at least every 60 days. Following the review, the physician should certify that the plan of treatment is being followed and the patient is making progress in attaining the established rehabilitation goals. When the patient has reached a point where no further progress is being made toward one or more of the goals, Medicare coverage ends with respect to that aspect of the plan of treatment.

**GENERAL ALLEGATIONS**

26. Based upon the facts and circumstances set forth in the attached Declaration of Special Agent Bernardo Rodriguez, Department of Health and Human Services (DHHS), Office of the Inspector General (OIG), Office of Investigation (OI), an investigation of the defendants was commenced. See Declaration of S/A Rodriguez attached hereto (hereinafter "Rodriguez Declaration").

27. After becoming eligible as CORFs in 1997 and 1998, SAMPLE and FHI, respectively, submitted claims to First Coast for outpatient rehabilitation therapy services. Prior to 1999, SAMPLE and FHI, did not provide or submit claims for any respiratory therapy. Their claims during prior years consisted primarily of the provision of physical therapy services. Based upon a review of billing patterns, First Coast determined that the shift in billing for SAMPLE and FHI is due to the fact that respiratory therapy has no capitation fee, versus the $1,500 capitation fee imposed on the other types of therapy. (Rodriguez Declaration).

28. In 1999, a total of eleven beneficiaries contacted the Fraud Control Hotline of First Coast to file complaints against SAMPLE. Of these complaints, nine reported that they did not receive the services that SAMPLE had billed on their behalf. On January 5, 2000, a beneficiary filed a complaint against FHI alleging that FHI did not provide the services billed on that beneficiary's behalf. (Rodriguez Declaration).

29. The Medicare Anti-Fraud Branch of First Coast requested a

9

disproportionate stratified random sample of thirty beneficiaries be selected from claims submitted by FHI and SAMPLE for the years in question. FHI's random sample provided the following results: eleven stated they were recruited and referred to the facility by a fried; six stated that they did not receive the services; six could not be located; two were out of town, one could not be interviewed due to his mental state; and four stated that they had received the services allegedly provided. SAMPLE's random sample provided the following results: seven did not receive the services; three stated that they were recruited and referred to the facility by a friend; six had died; one refused to be interviewed; eight could not be located; one never received the therapy that was billed; two did not recognize the name of the physician that was listed as the referring physician, and one was out of town.

30. Based upon the information gathered, the random sampling data and the records reviewed by S/A Rodriguez, the investigation has disclosed that FHI and SAMPLE are engaged in the following illegal activities: (1) providing services to Medicare beneficiaries that were not referred by a physician; (2) providing services to Medicare beneficiaries that were not medically necessary; (3) services not rendered, and/or services not provided as billed. It has been discovered that FHI and SAMPLE have engaged in the recruitment of Medicare beneficiaries which is prohibited. Recruitment allows FHI and SAMPLE to submit claims on behalf of Medicare beneficiaries without possibly obtaining an appropriate physician referral as required. The investigation has further

10

disclosed that Medicare payments made to FHI and SAMPLE are withdrawn and deposited into the PENNACLE, NATIONAL, GATEWAY and WEMAC business accounts. All of these accounts are controlled by the individual defendants, HOUSLEY, CHOI and MIGNOTT. These individuals are connected to the illegal activities of FHI and SAMPLE.

## COUNT I

### INJUNCTIVE RELIEF
### 18 U.S.C. § 1345

31. The United States realleges and incorporates by reference paragraphs 1 through 30 of this complaint as though fully set forth herein.

32. Defendants Florida Health Institute, Inc., Sample Road Rehabilitation Center, Inc., Pennacle Rehab Services of Florida, Inc., National Medical Systems and Supplies, Inc., Gateway to Health Rehabilitation, Inc., Wemac, Inc., and Elliot Housley, Ricardo Choi, and Anthony Mignott a/k/a Mark A. Mignott, individually, have presented or caused to be presented false and fraudulent claims upon the United States in violation of 18 U.S.C. §287. Defendants have knowingly and willfully presented, or caused to be presented, false and fraudulent claims to Frist Coast, the fiscal agent administering the Medicare program.

33. Defendants' fraud upon the United States constitutes a continuing and substantial injury to the United States and its citizens.

34. The United States brings this action to protect

Medicare funds by restraining defendants' unlawful fraudulent conduct and to protect and restrain the transfer of funds and assets now in defendants' hands as ill-gotten gains from their fraud upon the Medicare program.

35.  Upon a showing of a reasonable and substantial likelihood that defendants are violating 18 U.S.C. §287 the United States is entitled, under 18 U.S.C. §1345, to a preliminary injunction, and a permanent injunction restraining future fraudulent conduct and any other action which this Court deems just in order to prevent a continuing and substantial injury to the United States.  This relief would include an order freezing defendants' assets that are the product of, or profit on the product of, their fraud.

## COUNT II

### FALSE CLAIMS ACT
### 31 U.S.C. §§ 3729-3733

36.  The United States realleges and incorporates by reference paragraphs 1 through 30 of this complaint as though fully set forth herein.

37.  This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§3729-3733, against defendants for knowingly presenting or causing to be presented, false or fraudulent claims to the United States.

38.  From June 1, 1999, defendants have presented or caused to be presented claims for payment to the United States knowing such claims were false, fictitious, or fraudulent, or with

reckless disregard or deliberate ignorance of the truth or falsity of the claims.

39. By virtue of the false, fraudulent, and fictitious claims presented or caused to be presented by the defendants, plaintiff United States is entitled to three times the amount by which it was damaged, to be determined at trial, plus a civil penalty of not less than $5,000 and not more than $10,000 for each false claim presented or caused to be presented.

## COUNT III

### FEDERAL DEBT COLLECTION PROCEDURES ACT
### 28 U.S.C. §§ 3001-3301

40. The United States realleges and incorporates by reference paragraphs 1 through 30 of this complaint as though fully set forth herein.

41. This is a claim for pre and post judgment remedies to recover a judgment on a debt and to obtain, before judgment on a claim for a debt, certain pre-judgment discovery and remedies in connection with such claim.

42. From June 1, 1999, defendants have presented or caused to be presented claims for payment to the United States knowing such claims were false, fictitious, or fraudulent, or with reckless disregard or deliberate ignorance of the truth or falsity of the claims.

43. By virtue of the false, fraudulent, and fictitious claims presented or caused to be presented by the defendants, plaintiff United States is entitled to discover the debtor's

financial condition; prejudgment remedies such as attachment, receivership, garnishment and sequestration; post judgment liens and garnishments, and the setting aside of fraudulent transfers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States of America prays that:

I. As to Count I: That the preliminary injunction granted in this matter against Florida Health Institute, Inc., Sample Road Rehabilitation Center, Inc., Pennacle Rehab Services of Florida, Inc., National Medical Systems and Supplies, Inc., Gateway to Health Rehabilitation, Inc., Wemac, Inc., and Elliot Housley, Ricardo Choi, and Anthony Mignott a/k/a Mark A. Mignott, individually, be executed to include assets of defendants and that a permanent injunction shall be issued forthwith which orders that defendants, their agents, servants, employees, attorneys, and all persons acting in concert and participation with them, be enjoined as follows:

(1) From making or conspiring to make false or fraudulent Medicare reimbursement claims to First Coast, as fiscal agent for the Medicare program in violation of 18 U.S.C. §287;

(2) From withdrawing or transferring any moneys or sums presently deposited, or held on behalf of any defendant by any financial institution, trust fund, or other financial agency, public or private, specifically from Account Number 003664289183, in the name of Florida Health Institute, Inc., Account Number 003664282122, in the name of Pennacle Rehab Services of Florida, Inc., Account Number 003665216223, in the name of National Medical

System and Supplies, Inc., Account Number 003871443889, in the name of Gateway to Health Rehabilitation, Inc. and Account Number 00366204331, in the name of Wemac, Inc., all held at Bank of America d/b/a Nations Bank, as well as Account Number 00055310690 in the name of Sample Road Rehabilitation Center, Inc., at Bank Atlantic, as well as Investment Account Numbers 5U9636001, 5U9626010, 5U9636258, at Pershing Banking and Funds in the name of the defendants.

(3) From transferring, selling, assigning, dissipating, concealing, encumbering, impairing or otherwise disposing of, in any manner, assets, real or personal, in which any of defendants acquired an interest after June 1, 1999.

(4) Ordering defendants to preserve all business, financial and accounting records, including bank records, which detail defendants' business operation and disposition of any payment which directly or indirectly arose from the payment of money to any of the defendants by First Coast on behalf of the Medicare program;

(5) Ordering defendants to preserve all medical records, including patient records, which relate to defendants' business operation and/or to services for which claims were submitted to the Medicare program;

(6) Ordering defendants to provide an accounting of the assets in which any of the defendants acquired an interest after June 1, 1999, within seven calendar days, and to provide on a monthly basis, commencing forthwith, suitable reports detailing their financial condition;

(7) Ordering defendants to complete a Financial Disclosure Statement form provided to the defendants by the plaintiff withing seven calendar days;

(8) Ordering the individual defendant to provide discovery submitted by the United States within ten (10) days; and

(9) Authorizing First Coast to withhold payment of Medicare claims for services for which the defendants have not yet been reimbursed.

As to Count II:

(10) That judgment be entered in its favor and against the defendants for treble the United States' damages and for civil penalties of between $5,000 and $10,000 for each false claim, plus interest and costs, and for such other and further relief as the Court shall deem just and proper.

and As to Count III:

(11) All pre and post judgment remedies provided for in the Federal Debt Collection Procedures Act, allowed under said law, as application, when required, is presented to this Court.

Respectfully submitted,

THOMAS E. SCOTT
UNITED STATES ATTORNEY

By: *Laurie E. Rucoba*
LAURIE E. RUCOBA
Assistant United States Attorney
No. A5500052
500 East Broward Boulevard
Suite 700
Ft. Lauderdale, Florida 33394
Tel: (954) 356-7314, ext. 3613
Fax: (954) 356-7180

# CIVIL COVER SHEET

JS 44 (Rev. 12/96)

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

FILED BY _____ D C
00 JAN 28 PM 3:51
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - FTL

**DEFENDANTS**
FLORIDA HEALTH INSTITUTE, INC., et al

**00-6143**

**MAGISTRATE JUDGE SNOW**

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
LAURIE E. RUCOBA
ASSISTANT U.S. ATTORNEY   954-356-7314
500 E. Broward Blvd, Ft.Lauderdale, FL 33394

ATTORNEYS (IF KNOWN)
Unknown

(d) CIRCLE COUNTY WHERE ACTION AROSE: DADE, MONROE, (BROWARD), PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION
☒ 1 U.S. Government Plaintiff

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)

## IV. ORIGIN
☒ 1 Original Proceeding

## V. NATURE OF SUIT

## VI. CAUSE OF ACTION
Injunctive action under 18 U.S.C. Section 1345. Damages and Penalties Under 31 U.S.C. Section 3729 et seq and pre & post judgment remedies under 28 U.S.C. Section 3001 et seq, Medicare Fraud

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

## VIII. RELATED CASE(S) IF ANY
N/A

DATE: 1/28/00

SIGNATURE OF ATTORNEY OF RECORD: Laurie E. Rucoba

FOR OFFICE USE ONLY
RECEIPT # GOVT