FILED BY _____ D.C.

00 JAN 28 PM 3:55

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.–FTL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **00-6143**

**CIV - FERGUSON**

**MAGISTRATE JUDGE SNOW**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FLORIDA HEALTH INSTITUTE, INC., ) | |
| SAMPLE ROAD REHABILITATION ) | |
| CENTER, INC., PENNACLE REHAB ) | |
| SERVICES OF FLORIDA, INC., ) | |
| NATIONAL MEDICAL SYSTEMS and ) | |
| SUPPLIES, INC., GATEWAY TO ) | |
| HEALTH REHABILITATION, INC., ) | |
| WEMAC, INC., and ELLIOT HOUSLEY, ) | |
| RICARDO CHOI, and ANTHONY ) | |
| MIGNOTT a/k/a MARK A. MIGNOTT, ) | |
| individually, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

AFFIDAVIT OF SPECIAL AGENT BERNARDO RODRIGUEZ
DEPARTMENT OF HEALTH AND HUMAN SERVICES
OFFICE OF THE INSPECTOR GENERAL OFFICE OF INVESTIGATION
IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING
ORDER, PRELIMINARY AND PERMANENT INJUNCTION,
OTHER EQUITABLE RELIEF, DAMAGES, PENALTIES
<u>AND PRE/POST JUDGEMENT REMEDIES</u>

1.   I, Special Agent (SA) Bernardo Rodriguez Department of Health and Human Services Office

of the Inspector General Office of Investigation ("OIG"), duly sworn, do hereby depose and state:



2.  I have been a Special Agent with OIG since 1997 investigating Medicare fraud. Previously I was employed as a Special Agent for one and a half years by the Immigration and Naturalization Service investigating immigration violations.

3.  This investigation has been conducted with the assistance of seven fellow OIG agents, S/A Ariel Rodriguez, S/A Madeline Rodriguez, S/A Alain Rosello, S/A Joe Birdsong, S/A Tom Murach, S/A John Mejia and Investigative Assistant Isel Avila.

4.  This affidavit is made in support of a motion for temporary restraining order and motion for preliminary injunction to freeze all bank and investment accounts held by Florida Health Institute, Inc.; Sample Road Rehabilitation Center, Inc.; Pennacle Rehab Services of Florida, Inc.; National Medical System and Supply, Inc.; Gateway to Health Rehabilitation, Inc.; Wemac, Inc.; Ricardo Choi; Elliott J. Housley; Anthony. Mignott, a/k/a Mark A. Mignott and Mark Mignott, including but not limited to the following bank and investment accounts:

    a.  Bank of America d/b/a Nations Bank
    7770 West Oakland Boulevard
    Sunrise, Florida 33351                                     <u>Account Number</u>

    i. Florida Health Institute, Inc.                          003664289183

    ii. Pennacle Rehab Services of Florida, Inc.               003664282122

    iii. National Medical System and Supplies, Inc.            003665216223

    iv. Gateway to Health Rehabilitation, Inc.                 003871443889

    v. Wemac, Inc.                                             003666204331

    b.    Bank Atlantic
7220 NW 36 Street
Miami, Florida 33166                                                    <u>Account Number</u>

        i. Sample Road Rehabilitation Center, Inc.         0055310690

    c.    Pershing
Banking and Funds
Pershing Plaza
Jersey City, New Jersey 07399                                      <u>Account Number</u>

        i. Investment account                                       5U9636001

        ii. Investment account                                     5U9626010

        iii. Investment account                                    5U9636258

5.    An investigation into the aforementioned individuals, companies and their respective commercial bank accounts has shown the following:

    a.    Florida Health Institute, Inc. (FHI) became a Florida corporation on June 26, 1997. The company's Registered Agent is Jose PUJOL, Esq. The Director/President is Michael SCULLY, the Vice President is Maite ECHEVERRIA and the Secretary is Mirta REBSTOCK. The facility's principal address is 9370 Sunset Drive, Suites A103-104, Miami, Florida. See Attachment #1.

    FHI became a Medicare Provider on January 7, 1998 (Provider #10-3251). On the Medicare application, Michael SCULLY is listed as the President, Maite ECHEVERRIA as the Vice President and Mirtha REBSTOCK as the Secretary and Treasurer. SCULLY signed the Medicare application on September 15, 1997. See Attachment #2.

A review of FHI's bank records show that Account # 003664289183 was opened on August 27, 1999, and its signatories are President Elliot J. HOUSLEY, Vice President Anthony MIGNOTT, a/k/a Mark A. MIGNOTT and Treasurer Richard CHOI. See Attachment #3.

b.  Sample Road Rehabilitation Center, Inc. (SAMPLE) became a Florida corporation on May 6, 1997. The company's Registered Agent and Director is John E. BODDEN, MD. The facility's principal address is 440 East Sample Road, Suite 103, Pompano Beach, Florida, 33064. See Attachment #4.

SAMPLE became a Medicare provider on November 3, 1997 (Provider # 10-3238). Valerie Y. BODDEN signed the Medicare application as the Administrator on September 22, 1997. See Attachment #5.

A review of SAMPLE's bank records show that Account # 0055310690 was opened on May 28, 1999, and its signatories are Anthony MIGNOTT, Elliott J. HOUSLEY and Ricardo CHOI. See Attachment #6.

c.  Pennacle Rehab Services of Florida, Inc. (PENNACLE) became a Florida Corporation on October 29, 1998. The company's Registered Agent and Director is Elliott HOUSLEY. The facility's principal address is 4200 N.W. 16 Street, Ft. Lauderdale, Florida 33313. See Attachment #7. PENNACLE is not a Medicare provider.

A review of PENNACLE's bank records show that Account # 003664282122 was opened on June 24, 1999, and its signatories are Vice President Elliott HOUSLEY and Secretary Anthony MIGNOTT . See Attachment #8.

d.  National Medical System & Supplies, Inc. (NATIONAL) became a Florida Corporation on September 9, 1999. The company's Registered Agent is Corporation Service

Company (located at 1202 Hays Street, Tallahassee, Florida 32301) and the President is Elliott HOUSLEY. The facility's principal address is 7501 West Oakland Park Boulevard, Ft. Lauderdale, Florida 33319. See Attachment #9. NATIONAL is not a Medicare provider.

A review of NATIONAL's bank records show that Account # 003665216223 was opened on September 20, 1999, and its signatory is President Elliot J. HOUSLEY. See Attachment #10.

e. Gateway To Health Rehabilitation, Inc. (GATEWAY) became a Florida Corporation on June 2, 1997. The company's Registered Agent and Director is Ricardo CHOI. The facility's principal address is 510 N.W. 207 Avenue, Pembroke Pines, Florida 33029. However, a check on this location shows it as being a single family residence. In addition, there are no indications that the house is a business. See Attachment #11. GATEWAY is not a Medicare provider.

A review of GATEWAY's bank records show that Account # 003871443889 was opened on June 12, 1997, and its signatory is President Ricardo CHOI. The account was initially opened with Barnett Bank, which later merged with Nations Bank. See Attachment #12.

f. Wemac, Inc.(WEMAC) became a Florida Corporation on September 21, 1999. The company's Registered Agent is Corporation Service Company (located at 1202 Hays Street, Tallahassee, Florida 32301). The Directors are Anthony MIGNOTT and Tony SARON. The facility's principal address is 8366 N.W. 73 Avenue, Pompano Beach, Florida 33065. See Attachment #13. WEMAC is not a Medicare provider.

A review of WEMAC's bank records show that Account # 003666204331 was opened on August 27, 1999, and its signatories are President Elliott J. HOUSLEY, Vice President Mark MIGNOTT and Treasurer Ricardo CHOI. See Attachment #14.

6. Generally, our investigation has disclosed that FHI and SAMPLE are engaged in the following illegal activities: (1) providing services to Medicare beneficiaries who were not referred by a physician; (2) providing medically unnecessary services to Medicare beneficiaries; (3) services not rendered, and/or services not provided as billed. It has also been discovered that FHI and SAMPLE have engaged in the recruitment of Medicare beneficiaries, which is prohibited. Recruitment allows FHI and SAMPLE to submit claims on behalf of Medicare beneficiaries without possibly obtaining an appropriate physician referral as required by Medicare.

The investigation has further disclosed that Medicare payments made to FHI and SAMPLE are withdrawn and deposited into the PENNACLE, NATIONAL, GATEWAY and WEMAC business accounts. All of these accounts are controlled either by HOUSLEY, CHOI or MIGNOTT. Your affiant believes that these individuals are connected to the illegal activities of FHI and SAMPLE.

The undersigned affiant has reviewed the following records and documents:

   a. Medicare billing and payment information from January 5, 1998 through and including November 12, 1999, provided by First Coast Services Options, Inc. (FIRST COAST), the fiscal intermediary for these providers; See Attachment #15.

   b. Records of complaints received against FHI and SAMPLE; See Attachment #16.

   c. Bank account information;

   d. State of Florida corporate records;

   e. Health Care Financing Administration (HCFA) regulations that govern Comprehensive Outpatient Rehabilitation Facility (CORF) services.

  f. FHI's and SAMPLE's 1998 Cost Report.

7. After conducting the record and document review, your affiant determined the following:

  a. In calender year 1998, FHI filed 129 claims for a total reimbursement of $145,963.81. For calender year 1999, FHI filed 1,221 claims for a total reimbursement of $1,578,742.88. See Attachment #17.

  b. In 1998, SAMPLE filed 864 claims for a total reimbursement of $395,210.05. For calender year 1999, SAMPLE filed 2,864 claims for a total reimbursement of $3,420,653.15. See Attachment #17.

  c. In 1998, FHI and SAMPLE did not provide or submit claims for any respiratory therapy. Their claims during this year consisted of 98% physical therapy and the remaining 2 % on other types of therapy. See Attachment #17.

  d. In 1999, FHI and SAMPLE claims consisted of 99% respiratory therapy. According to FIRST COAST auditors and investigators, the main reason for this shift is due to the fact that respiratory therapy has no capitation fee, versus the $1,500 capitation fee imposed on the other types of therapy. See Attachment #17.

  e. Financial records show that the only source of income for FHI and SAMPLE are the Medicare payments deposited into their respective business accounts.

  f. Once the Medicare checks are deposited into FHI's and SAMPLE's accounts, the money remains in those accounts for approximately two days. At such time, the majority of the money is divided into three equal payments made to cash. With these checks, HOUSLEY, CHOI and MIGNOTT purchase teller's checks that are then deposited into PENNACLE, NATIONAL,

GATEWAY and WEMAC business accounts. According to bank officials, the teller's checks enable HOUSLEY, CHOI and MIGNOTT to have immediate access to that money.

    g.    On November 18, 1999, Nations Bank erroneously failed to lift a hold placed on Medicare deposits going into FHI and SAMPLE accounts. This hold caused checks written from these accounts to HOUSLEY's, CHOI's and MIGNOTT's investment accounts to bounce. Therefore, CHOI requested that Nations Bank write a letter to Pershing acknowledging their mistake. See Attachment #18.

    h.    On January 1, 2000, CHOI wired $100,000 from the GATEWAY business account to the Bahamas. See Attachment # 19.

    i.    January 7, 2000, HOUSLEY wired $250,000 from the NATIONAL business account to Canada. See Attachment # 20.

    j.    On June 22, 1999, Diane Nieto, the Assistant Administrator for FHI, certified in FHI's 1998 Cost Report that FHI had no related organizations. See Attachment # 21. However, through a comparison of financial and corporate documentation, it is evident that the companies in question are in fact related parties. Specifically, the FHI, SAMPLE, PENNACLE, WEMAC, GATEWAY, and NATIONAL business bank accounts are all controlled by either HOUSLEY, CHOI or MIGNOTT.

8.    In 1999, a total of ten (10) beneficiaries contacted the Fraud Control Hotline of FIRST COAST to file complaints against SAMPLE. Of these, nine stated that they did not receive the services that SAMPLE had billed on their behalf. See Attachment #16

9.  More recently, on January 5, 2000 a beneficiary filed a complaint against FHI alleging that FHI did not provide the services billed on that person's behalf. See Attachment #16.

10. On January 12, 2000 at 10:00 AM, FIRST COAST and HCFA auditors visited the FHI location. They were greeted by Lyn PRADO who presented herself as FHI's Assistant Administrator. PRADO stated that Un Young CHOI was the owner of FHI. PRADO added that FHI's Administrator was Shawn FRASIER, but he was not available at the time. The auditors toured the facility, sketched the spaces and observed that there were no patients present. The following day, PRADO contacted the auditors to inform them that she had made a mistake that Michael SCULLY, not Un Young CHOI, was the owner of FHI. See Attachment #22.

11. A stratified random sample of thirty (30) beneficiaries was developed by FIRST COAST for both FHI and SAMPLE. See Attachment #23.

   a.  FHI's random sample provided the following results: eleven (11) beneficiaries stated that they were referred by a friend; six (6) beneficiaries did not receive the services; six (6) beneficiaries could not be located; two (2) beneficiaries were out of town; one (1) beneficiary could not be interviewed due to his mental state; and four (4) beneficiaries received the services.

   b.  SAMPLE's random sample provided the following results: seven (7) beneficiaries did not receive the services; three (3) beneficiaries stated that they were referred by a friend; six (6) beneficiaries had died; one (1) beneficiary refused to be interviewed; eight (8) beneficiaries were unable to be located; one (1) beneficiary never received the therapy as billed; two (2) beneficiaries

did not recognize the referring physician; and one (1) was out of town.

12. At the present time, SAMPLE has approximately $7,215.00 in pending Medicare payments.

13. Your affiant has reviewed the data supplied as to the application and payments received by FHI and SAMPLE, and assures that the information in this affidavit is accurate.

14. On the basis of this investigation and his experience as a Medicare fraud investigator, it is your affiant's opinion that the vast majority of the claims submitted by FHI and SAMPLE are fraudulent.

                                                              BERNARDO RODRIGUEZ
Special Agent
Department of Health and Human
Services Office of Inspector
General Office of Investigations

Date: January 28, 2000

# ADDITIONAL ATTACHMENTS NOT SCANNED

PLEASE REFER TO COURT FILE