UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-6143-CIV-
FERGUSON/SNOW

UNITED STATES OF AMERICA,

    Plaintiff,

v.

FLORIDA HEALTH INSTITUTE,
INC., etc., et al.,

    Defendants.
_____/



## DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO PRODUCE AND PERMIT THE INSPECTION AND COPYING OF COMPLETED FORMS OI-3 AND SUPPORTING MEMORANDUM OF LAW
(Fla. Bar No. 133162)

Defendants, by their undersigned attorneys and pursuant to Rule 37, Federal Rules of Civil Procedure, respectfully move for the entry of an order in the above styled civil action compelling Plaintiff United States of America ("the Government") to produce and permit the inspection and copy of the completed Forms OI-3 ("the OI-3's") pertaining to the Government's investigation into the Medicare-related activities of Defendants.

In support of this motion, Defendants respectfully direct the Court's attention to the following Memorandum of Law.

### MEMORANDUM OF LAW

I THE PROCEDURAL SETTING

Defendants, on February 10, 2000, pursuant to Rule 34, Federal Rules of Civil Procedure, requested the Government to produce and permit the inspection of documents in



its possession, custody or control pertaining to the following "Subjects":

    (A) The Medicare-related activities of the corporations named as Defendants in this civil action.

    (B) The Medicare-related activities of the individuals named as Defendants in this civil action.

    (C) The Government's investigation into the Medicare-related activities of the corporations named as Defendants in this civil action.

    (D) The Government's investigation into the Medicare-related activities of the individuals named as Defendants in this civil action.

The thirty (30) days afforded the Government for responding to Defendants' Rule 34 request have yet to elapse. The Government has not responded to that request.

On Friday, February 18, 2000, Defendants' undersigned attorney took the deposition examination of the Government's case agent, Special Agent Bernardo Rodriguez, Office of Investigations, Office of the Inspector-General, U.S. Department of Health and Human Services. The court reporter's preliminary version of the transcript of that deposition examination is attached to Defendants' March 2, 2000, Motion To Vacate Temporary Restraining Order.

During the February 18, 2000, deposition examination, Special Agent Rodriguez was questioned concerning the existence, description and whereabouts of reports filed by members of his investigatory team memorializing their interviews with Medicare beneficiaries. The following colloquy between counsel for the parties ensued:

"Q. What I'm really trying to find out is... was where are these reports kept, in whose office? What I'm trying to do is figure out the next stages. How do I verify what is on your chart? How do I know the beneficiary told the agent this or that, or this or that, or this or that, so I can look at the agent's report or I can go talk to the beneficiary, correct?

"A. Correct.

"Q. The first thing I'd want to do is look at the agent's report because we're in a civil case and I think it's probably discoverable, so I need for you to tell me what that file is called so I can identify it and make a specific request.

"MS. RUCOBA: I'll stipulate for the record that the reports of interviews are called OI-3's and that the OI-3's are kept in the case file, and I also note for the record that the government believes that the OI-3's are work product and privileged, but you can make a request for them.

"MR. METSCH: Well, we sure will. Consider it done. We're requesting it right now, and as far as I'm concerned the request we already submitted to you embraces and covers this very area. I just want to make sure we know they exist because we have requested all documents and materials which are discoverable concerning the status of the investigation or the work ordered and accrued during the investigation and this would certainly be in them." TR., pp. 52-53.

In summary, although the Government has not formally responded to Defendants' request for production of documents, its attorney, during the February 18, 2000, deposition examination of Special Agent Rodriguez, declared that the OI-3's which have been filed by Special Agent Rodriguez's investigatory team are "work product and privileged". It is safe to infer that the Government, when it formally responds to Defendants' request for production of documents, will object to the production of the OI-3's.

II <u>THE QUESTION PRESENTED</u>

Are the OI-3's "work product and privileged"?

For the reasons that follow, Defendants respectfully contend that the foregoing question should be answered in the negative and move for their immediate production.

III <u>DISCUSSION</u>

The Court, in *United States v. Continental Can Company*, 22 F.R.D. 241 (S.D.N.Y. 1958), declared:

> "There is ample authority for the belief that, regardless of the extent of the privilege when strangers seek to pry open the government's files for private benefit, once the government itself comes into court as a party, even in the performance of a regulatory function, it waives the privilege, if any it had."
> (Footnote and citations omitted)

22 F.R.D. at 245.

The Government, in *United States v. Gates*, 35 F.R.D. 524 (D. Colo. 1964), sued to recover a tax refund. The defendants/taxpayers moved to require the Government to produce for inspection and copying certain files, file materials, reports and information possessed by the Government. The District Court, rejecting the Government's claim of executive privilege, stated:

> "It is not contended that documents sought consist of confidential attorney-client communications between the Internal Revenue Service and the Department of Justice. The government's claim that they embody the work product of government attorneys is misleading. No work product of any attorney, as such, is privileged in the traditional evidentiary or testimonial sense. While it is true that documents embodying the work product of an attorney, acting as such, are not normally discoverable, save on an exceptional showing of good cause, this is not because they are privileged in the way that

4

confidential attorney-client communications are; it is, rather, because courts respect the policy of *Hickman v. Taylor* [329 U.S. 495 (1947)], a policy of not unreasonably inhibiting attorneys from reducing their mental impressions, analysis and strategy to writing for their own use.

"Only on the ground that the documents in question are the subject of what has been called `executive privilege', formally claimed, might they arguably be withheld from the defendants. Executive privilege has been formally claimed with respect to the documents in question by the Attorney General of the United States. The fact that the Attorney General has asserted the privilege certainly produces pause and utmost care, but the claim must be nevertheless refused because the basis for the claim is not the contention that military, diplomatic or other high policy secrets are involved. *United States v. Reynolds, 345 U.S. 1 (1953)*. It is, rather, that the documents sought embody the work product of government attorneys in preparation for trial.

"This claim of privilege must be rejected for three alternate reasons:

"1. The government has neither established nor offered to establish that the documents sought consist in any way of trial preparation materials embodying the work product of government attorneys within the scope of the doctrine of *Hickman v. Taylor, supra.* The documents sought, indeed, appear to consist of historical files, prepared by the Internal revenue Service (not the Department of Justice), respecting the valuation of Gates Rubber Company stock, and past tax returns of members of the Gates family which are plainly indicated to be relevant to the subject matter of this lawsuit instituted by the United States to recover a tax refund which it made to the defendants.

"2. Even on the assumption that the documents sought to be discovered do embody the work product of government attorneys, we would conclude that exceptional good cause for their production has been shown. The interest of the defendants in securing the information in the historical files of the Internal Revenue Service relating to their family company is great, and may, indeed, be imperative in view of the

> government's seeming reliance on its analysis of the details of intertwined family and company financial transactions involving at least three generations of the Gates family to establish the civil claim which it has brought against particular members of the family in this action.
>
> "3. Even on the assumption that the documents in question were the proper subject of a claim of executive `housekeeping' privilege, the government's claim of that privilege must be deemed to have been waived when it instituted this lawsuit. We conclude that the government, especially in a civil action of this sort, waives any executive privilege which might arguable exist otherwise- including even the entirely legitimate privilege which the government might otherwise assert with respect to diplomatic and military service– when it, as plaintiff, maintains an action in which the documents in question would be discoverable in the absence of the purported executive privilege...
>
> "As a matter of fairness and equity, the government can not, in our view, be permitted to maintain a civil action against one of its citizens, relying for its case on documentary evidence respecting the intricacies of the family-company financial dealings which are under attack here, and at the same time refuse to permit the very family and company whose dealings are under attack to have access to the materials which appear at this juncture to provide the raw material both for the government's claim against these particular family members– and for their defense." (Citations omitted)

35 F.R.D. at 528-529.

In *Federal Deposit Insurance Corporation v. St. Paul Fire & Marine Insurance Company*, 53 F.R.D. 260 (W.D. Okla. 1971), the District Court rejected the FDIC's contention that the reports of its bank examiners were privileged and, therefore, not discoverable:

> "As to Interrogatory 9, Defendants have suggested that as FDIC, a Federal corporation and a governmental agency, has instituted this action nit is not entitled to assert a claim of

> governmental privilege, or by bringing this action has waived the same as to information here desired. This Court has held that the FDIC is a Federal agency within the meaning of the Federal Tort Claims Act... The Court concludes that as a Federal agency, it is an entity entitled to assert a claim of governmental privilege where the same exists, or has not been waived and provided it does so properly.
>
> "As to waiver or denial of governmental privilege by reason of instituting the suit, the authorities generally in this situation deny the privilege with notable exceptions as the identity of informers and state, diplomatic and military secrets... The Court concludes from the foregoing authorities and the nature and circumstances of this case that Plaintiff FDIC should be denied governmental privilege as to the reports of FDIC examiners because it instituted this action. In any event, the privilege has not been properly invoked." [FN 2] (Citations omitted)

53 F.R.D. at 262. Footnote 2 to the District Court's decision in *Federal Deposit Insurance Corporation v. St. Paul Fire & Marine Insurance Company, supra*, observed:

> "Under the procedures of *United States v. Reynolds*, 345 U.S. 1 (1953), a claim of privilege by the government must be formally lodged by the head of the governmental department that has control over the matter, after actual personal consideration by that officer. The *Reynolds* case involved a `state secrets' claim, but the procedures evolved have been applied to claims of executive privilege, that is, claim not involving national security... Whether the privilege is rightfully invoked is a question of law for the Court... The claim of privilege has been asserted only by locally employed private counsel and is not sufficient in view of the *Reynolds* case, *supra*." (Citations omitted)

53 F.R.D. at 262. *See, also, Department of Economic Development v. Arthur Andersen & Co. (U.S.A.)*, 139 F.R.D. 295 (S.D.N.Y. 1991) (a foreign sovereign or governmental entity which files a lawsuit automatically waives certain privileges by implied intention).

7

Under the foregoing authorities, the Government's claim of "work product and privilege" in this case with respect to the OI-3's should be rejected because:

(a) they were prepared by special agents of the Office of Investigations, not by governmental lawyers (thereby negating a claim of attorney work-product);

(b) Defendants have a great interest gaining access in the OI-3's, which form the predicate of the Government's claims against them;

(c) the Government instituted this civil action; and

(d) neither the Secretary of Health and Human Services nor the Attorney-General of the United States has personally interposed a claim of executive privilege with respect to the OI-3's.

IV CONCLUSION

Defendants' foregoing motion should be granted.

Respectfully submitted,

METSCH & METSCH, P.A.
Attorneys for Defendants
1385 N.W. 15th Street
Miami, Florida 33125
(305) 545-6400
FAX: (305) 545-7224

by _____
   LAWRENCE R. METSCH
   FBN 133162

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing motion and supporting memorandum of law was delivered this 3rd day of March, 2000, to:

Laurie E. Rucoba, Esq.
Assistant U.S. Attorney
500 East Broward Blvd.
Suite 700
Fort Lauderdale, FL 33394
FAX: (954) 356-7180

LAWRENCE R. METSCH