

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-6143-CIV-FERGUSON/SNOW

UNITED STATES OF AMERICA,

           Plaintiff,

v.

FLORIDA HEALTH INSTITUTE, INC.,
etc., et al.,

           Defendants.
_____/

**DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO PRODUCE
AND PERMIT THE INSPECTION AND COPYING OF THE OI 3
REPORTS PREPARED BY AGENTS OF THE OFFICE OF
INVESTIGATIONS, OFFICE OF THE INSPECTOR-GENERAL,
U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
AND SUPPORTING MEMORANDUM OF LAW**
(Fla. Bar No. 133162)

Defendants, by their undersigned attorneys and pursuant to Rule 37, Federal Rules of Civil Procedure, respectfully move for the entry of an order in the above styled civil action compelling Plaintiff United States of America ("the Government") to produce and permit the inspection and copying of the OI 3 reports prepared by Special Agents of the Office of Investigations, Office of the Inspector-General, U.S. Department of Health and Human Services, of their interviews with the beneficiaries referred to in ¶ 11 of the affidavit of Special Agent Bernardo Rodriguez.

In support of this motion, Defendants respectfully direct the Court's attention to the following Memorandum of Law.

## MEMORANDUM OF LAW

I <u>THE PENDING RULE 65 MOTIONS</u>

The Government, at the inception of this civil action under 18 U.S.C. § 1345, secured an *ex parte* Temporary Restraining Order ("TRO") and moved for the issuance of a Preliminary Injunction ("PI"). A hearing on the Government's motion for a PI has been scheduled for March 31, 2000.

Defendants have moved to dissolve the TRO. In addition, they have requested an evidentiary hearing with respect to the Government's motion for a PI, which they oppose.

II <u>THE RODRIGUEZ AFFIDAVIT AND DEPOSITION EXAMINATION</u>

Special Agent Rodriguez's affidavit served as the evidentiary predicate for the Government's application for a TRO. In ¶ 11 of his affidavit, Special Agent Rodriguez stated:

> "A stratified random sample of thirty (30) beneficiaries was developed by FIRST COAST[1] for both FHI[2] and SAMPLE.[3] See Attachment #23.
>
> "a. FHI's random sample provided the following results: eleven (11) beneficiaries stated that they were referred by a friend; six (6) beneficiaries did not receive the services; six (6) beneficiaries could not be located; two (2) beneficiaries were out of town; one (1) beneficiary could not be interviewed due to his mental state; and four (4) beneficiaries received the services.

---

[1] First Coast Service Options, Inc., an affiliate of Blue Cross and Blue Shield of Florida, Inc., and Medicare's fiscal intermediary (*i.e.*, contractor).

[2] Defendant Florida Health Institute, Inc., a Florida corporation.

[3] Defendant Sample Road Rehabilitation Center, Inc., a Florida corporation

2

"b.  SAMPLE'S random sample provided the following results: seven (7) beneficiaries did not receive the services; three (3) beneficiaries stated that they were referred by a friend; six (6) beneficiaries had died; one (1) beneficiary had refused to be interviewed; eight (8) beneficiaries were unable to be located; one (1) beneficiary never received the therapy as billed; two (2) beneficiaries did not recognize the referring physician; and one (1) was out of town."

Defendants' undersigned lawyer took Special Agent Rodriguez's deposition examination on February 18, 2000.  Pertinent excerpts from the court reporter's transcript follow:

"Q.  How about Medicare beneficiaries who were interviewed, how were those interviews memorialized?  Were they tape recorded?  Were they videotaped?  Were they written out?  Were they signed by the beneficiaries, any written statements or notes taken by the agent or any combination of the foregoing?  How is it done?

"A.  There's a combination.

"Q.  All right.  Is there a file which consists of statements, written statements, given by Medicare beneficiaries?

"A.  Just files.

"Q.  Signed by these beneficiaries?

"A.  No.  Just points of our interview with them.

"Q.  All right.  Have any of these beneficiaries given affidavits in support of their testimony?  Have you asked them to sign sworn statements?  You, I mean you and your colleagues, have asked any of these beneficiaries who were contacted did they actually execute sworn statements like an affidavit?

"A.  The question is whether they have given sworn statements?

"Q.  Yes.

3

"A. No, they have not given sworn statements.

"Q. If I wanted to learn what these beneficiaries said, would I have to talk to the beneficiaries or is there some other source I could go to?

"A. You can talk to [Assistant U.S. Attorney] Laurie Rucoba.

"Q. No, she's not going to tell me.

"MS. RUCOBA: You can ask him if he remembers.

"MR. METSCH: What I'm getting at is this, other than the recollection of each agent who interviewed a beneficiary, other than, I would either have to talk to the beneficiary or talk to the agent, is that correct?

"WITNESS: I don't understand the question, sir.

"MR. METSCH: Let's assume that there was an interview between an agent of your Office of Investigations and a beneficiary as to whether certain CORF[4] related respiratory service had been rendered at a particular facility or under the auspices of a facility, and the beneficiary said either yes, no or I don't know, I don't remember, whatever it was, the agent would typically write down what the beneficiary told him or her, is that correct?

"A. That's correct.

"Q. Is there any other record other than the agent writing it down that I could look at other than that to verify what the beneficiary told that agent?

"MS. RUCOBA: By record, you're referring to a written record?

"MR. METSCH: Any record.

"MS. RUCOBA: Any record.

---

[4] Comprehensive Outpatient Rehabilitation Facility.

4

"BY MR. METSCH:

"Q. Any recorded record, videotape, anything, computer disk, whatever. Other than the agent's recollection of what the beneficiary said reduced to writing in a report, is there any other source I could go to other than the beneficiary himself or herself?

"A. There's other sources. I don't know if you can get those sources.

"Q. What is it?

"A. We have a request that we do in our office what is an internal report.

"MS. RUCOBA: It's a what?

"THE WITNESS: It's an internal. It's not internal, it's a report that we do. It's an office report.

"BY MR. METSCH:

"Q. All right, so each time an agent would interview a Medicare beneficiary, that agent would file a report in the office, is that correct?

"A. That's correct.

"Q. And where is that report kept, in a file?

"A. It's a file.

"Q. What is the file called?

"A. We have a case file that keeps everything. We–

\*   \*   \*   \*   \*   \*

"Q. What I'm trying to do is figure out the next stages. How do I verify what is on your chart? How do I know the beneficiary told the agent this or that, or this or that, or this or that, so I can look at the agent's report or I can go talk to the beneficiary,

5

is that correct?

"A. Correct.

"Q. The first thing I'd want to do is look at the agent's report because we're in a civil case and I think it's probably discoverable, so I need for you to tell me that that file is called so I can identify it and make a specific request.

"MS. RUCOBA: I'll stipulate for the record that the reports of interviews are called OI 3's and that the OI 3's are kept in the case file, and I also note for the record that the government believes that the OI 3's are work product and privileged, but you can make a request for them.

"MR. METSCH: Well, we sure will. Consider it done. We're requesting it right now, and as far as I'm concerned the request we already submitted to you embraces and covers this very area. I just want to make sure they exist because we have requested all documents and materials which are discoverable concerning the status of the investigation or the work ordered and accrued during the investigation and this would certainly be in them."[5]

\*     \*     \*     \*     \*     \*

"Q. All right, let's go to paragraph 11. It refers to "a stratified random sample'. What is a stratified random sample?

"A. A state guidelines of sample.

"Q. Wes, what does it mean?

"A. That's a process that a carrier, actually it is a computer program that has been developed. It was developed by HCFA, Health Care Financing Administration, given to the carriers. And they used that to take an inquiry of the universe or the beneficiaries provided service by a particular provider, and they have a way of coming out with a representative of that universe, and normally it's 30, and that's what this is.

---

[5] Transcript, deposition of Special Agent Rodriguez, pp. 48-53.

6

> "Q. So the computer randomly picks 30 beneficiaries by a provider and then the team goes out and uses these 30, is that correct?
>
> "A. That's correct.
>
> "Q. And we were talking earlier about the truths of these interviews recorded in the OI 3's, is that right?
>
> "A. That's right."[6]

In summary, only an examination of the OI 3's would enable Defendants and the Court to determine whether Special Agent Rodriguez, in ¶ 11 of his affidavit, has accurately characterized the [recorded] results of the Special Agents' interviews of those Medicare beneficiaries who had been randomly selected by First Coast.

III <u>DEFENDANTS' REQUEST FOR THE OI 3'S.</u>

On February 10, 2000, Defendants requested that the Government produce and permit the inspection and copying of documents in its possession, custody or control pertaining to the following subjects:

    A. The Medicare-related activities of the corporations named as defendants in this civil action.

    B. The Medicare-related activities of the individuals named as Defendants in this civil action.

    C. The Government's investigation into the Medicare-related activities of the corporations named as Defendants in this civil action.

---

[6] Transcript, deposition examination of Special Agent Rodriguez, pp. 114-115.

D. The Government's investigation into the Medicare-related activities of the individuals named as Defendants in this civil action.

The Government, on March 13, 2000, responded as follows to each of the foregoing "subject" categories:

> "Any and all documents responsive to this request are identified in Answer to Interrogatory No. 2. Many of these documents are attached to the Declaration of Special Agent Rodriguez which has already been provided to defendants. The remaining documents will be made available for viewing by defendants during normal business hours at the Offices of the United States Attorney upon request. The only documents that plaintiff objects to providing are the OI 3's- Reports of Interviews of the Special Agents of HHS/OIG/OI as they are work product and privileged. *See United States v. Nobles*, 422 U.S. 225, 238-39 (1975); and *United States v. Chatham City Corp.*, 72 F.R.D. 640, 643 (S.D. Ga. 1976)."

IV <u>THE QUESTION PRESENTED</u>

Should the Government be compelled to produce and permit Defendants to inspect and copy the OI 3's?

V <u>THE PARTIES' CONTENTIONS</u>

The Government contends that the OI 3's are "work product" and "privileged".

Defendants contend that the OI 3's are neither "work product" nor "privileged". Moreover, Defendants contend that the Government, by using Special Agent Rodriguez's affidavit to obtain an *ex parte* TRO in this civil action, has waived its right to claim that the OI 3's are "work product" and "privileged".

8

VI <u>DISCUSSION AND ARGUMENT</u>

    A.    <u>The OI 3's Are Neither "Work Product" Nor "Privileged".</u>

Rule 26(b)(1), Federal Rules of Civil Procedure, provides:

> "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

Rule 26(b)(3), Federal Rules of Civil Procedure, provides:

> "Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

Rule 26(b)(5), Federal Rules of Civil Procedure, provides:

> "When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a

9

> manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

With respect to the discoverability of the OI 3's, Defendants have satisfied the criteria of Rule 26(b)(3), Federal Rules of Civil Procedure, because: (a) Defendants need them in order to confirm or discredit the accuracy of ¶ 11 of Special Agent Rodriguez's affidavit; and (b) they are available from no source other than the Government.

Conversely, with respect to the discoverability of the OI 3's, the Government has failed to satisfy the criteria of Rule 26(b)(5), Federal Rules of Civil Procedure, because: (a) it has not even attempted to establish that Defendants either do not need them or can get them from another source; and (b) the attorney-client "privilege" is not implicated by the OI 3's.

    B.    <u>The Government, By Using Special Agent Rodriguez's Affidavit To Obtain An *Ex Parte* TRO In This Civil Action, Has Waived Its Right To Claim That The OI 3's Are "Work Product" And "Privileged".</u>

The decision in *United States v. Robles, supra*, relied upon by the Government, actually supports Defendants' contention that the Government, by using Special Agent Rodriguez's affidavit to obtain an *ex parte* TRO in this civil action, has waived its right to claim that the OI 3's are "work product" and "privileged".

In *United States v. Robles*, the Supreme Court, reinstating a criminal conviction, held that:

> (1) the District Court's refusal to permit a defense investigator to testify about his interviews with prosecution witnesses, when defense counsel stated that he did not intend to produce the investigator's report for submission to the prosecution for

LAW OFFICES OF METSCH & METSCH, P.A.
1385 NW 15 STREET, MIAMI, FLORIDA 33125 • TELEPHONE 305-545-6400 • TELECOPIER 305-545-7224

inspection at the completion of the investigator's testimony, did not violate the defendant's Fifth Amended privilege against compelled self-incrimination; and

(2) the qualified privilege derived from the attorney work-product doctrine was waived with respect to matters covered in the investigator's testimony and was not available to prevent the disclosure of the report to the prosecution.

The decision in *United States v. Robles,* as applied to this dispute, compels the conclusion that the Government, having used Special Agent Rodriguez's affidavit to obtain an *ex parte* TRO in this civil action, has waived its right to claim that the OI 3's, whose contents were characterized in ¶ 11 of that affidavit, are protected from pre-trial discovery as "work product" and "privileged".

## VII CONCLUSION

Defendants' motion to compel the Government to produce and permit the inspection and copying of the OI 3's should be granted.

Respectfully submitted,

METSCH & METSCH, P.A.
Attorneys for Defendants
1385 N.W. 15th Street
Miami, Florida 33125
(305) 545-6400
FAX: (305) 545-7224

by _____
LAWRENCE R. METSCH
FBN 133162

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing motion and supporting memorandum of law was mailed and that a true copy was telecopied __ day of March, 2000, to:

Laurie E. Rucoba, Esq.
Assistant U.S. Attorney
500 East Broward Blvd.
Suite 700
Fort Lauderdale, Florida 33394
FAX: (954) 356-7180

_____
LAWRENCE R. METSCH

LAW OFFICES OF METSCH & METSCH, P.A.
1385 NW 15 STREET, MIAMI, FLORIDA 33125 • TELEPHONE 305-545-6400 • TELECOPIER 305-545-7224